**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Clifford K. KENNELL, Defendant–Appellant.**

**No. 93–30122.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 1993.

Decided Jan. 24, 1994.

---

Patrick K. Stiley, Stiley & Kodis, Spokane, WA, for defendant-appellant.

Robert A. Ellis, Asst. U.S. Atty., Yakima, WA, for plaintiff-appellee.

Before: WRIGHT, GOODWIN, and HUG, Circuit Judges.

## OPINION

GOODWIN, Circuit Judge:

Clifford Kennell appeals his conviction and sentence, challenging the denial of his motion to withdraw his guilty plea to a single count of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). We reverse.

A three-count indictment charged Kennell with conspiracy to distribute marijuana in violation of 21 U.S.C. § 846; manufacture of over 100 marijuana plants in violation of 21 U.S.C. § 841(a)(1); and maintaining a place for the purpose of manufacturing marijuana in violation of 21 U.S.C. § 856(a)(1).

After negotiation, the government entered into a written plea agreement with Kennell, whereby Kennell agreed to plead guilty to an amended charge of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). In return, the government recommended that Kennell receive a reduced sentence of ten months, and agreed not to object if the district court decided to impose a sentence of probation. There was little or no physical evidence connecting Kennell to the marijuana growing operation. The government's case depended upon the testimony of a codefendant who had earlier pled guilty.

During the Change of Plea Hearing, Kennell responded affirmatively to the district judge's questioning whether he had read the plea agreement. The court made certain, as required by Fed.R.Crim.P. 11(c), that Ken-

nell understood he was waiving his right to trial by jury, and advised him of the maximum penalty—twenty years imprisonment and a fine of one million dollars—for the charge against him. However, the district court did not ask Kennell, as required by Rule 11(e)(2), whether he understood that the court was not bound by the recommendation, or that Kennell would not be able to withdraw his guilty plea once entered.

The court rejected the recommendations of the plea agreement and imposed a sentence of 41 months. Kennell made a timely motion for reconsideration, pointing out that his plea was invalid as a matter of law under Fed. R.Crim.P. 11(e)(2). The court denied the motion, relying on paragraph 4 of the plea agreement: "Defendant understands the recommendation as to incarceration is only a recommendation which is not binding on the sentencing judge. Defendant also understands that should the sentencing judge decide not to accept any of these recommendations, that decision is not a basis for withdrawing from this agreement."

Because the district court failed to comply with Fed.R.Crim.P. 11(e)(2) by expressly advising the defendant that the plea could not be withdrawn, we have a conflict between the mandatory requirement of Rule 11(e)(2) and the harmless error clause of Rule 11(h). The government relies on the written agreement to sustain the court's action, and the defendant relies on Rule 11(e)(2), asserting that he did not understand the implications of the written plea agreement.

In a number of unpublished decisions we have remanded cases in which the district judge treated the written plea agreement and the defendant's open court affirmative response to the question whether he has read the plea agreement as the equivalent of the plain requirement of Rule 11(e)(2). The frequency of these appeals and reversals suggests that it is time to publish an opinion pointing out that Rule 11(e)(2) is to be taken seriously, and that the error is rarely harmless.

Because there is a marked difference between being warned in open court by a district judge and reading some boiler-plate language during the frequently hurried and hec-

tic moments before court is opened for the taking of pleas and arraignments, the reading of the plea agreement is no substitute for rigid observance of Rule 11.

Rule 11(e)(1) outlines three types of plea agreements sanctioned by federal courts. Although the written plea agreement signed by Kennell does not explicitly state under which class it falls, it is clearly a "type (B)" agreement. Type (B) agreements permit the prosecution to "make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court." Fed.R.Crim.P. 11(e)(1)(B). Unlike type (A) or (C) plea agreements, type (B) guilty pleas cannot be withdrawn once made:

> A fundamental consequence of a type (B) plea agreement is that the defendant cannot withdraw his guilty plea. The district court may reject the recommended sentence and nonetheless bind the defendant to a higher sentence. Unlike other plea agreements made pursuant to Rule 11, type (B) agreements, once accepted by the court, foreclose forever the defendant's other options.

*United States v. Graibe*, 946 F.2d 1428, 1432 (9th Cir.1991).

Rule 11(e)(2) requires that "the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea." Fed.R.Crim.P. 11(e)(2). Because Rule 11(h) provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded," courts have been reluctant in some cases to set aside type (B) guilty pleas when the disappointed defendant has second thoughts and invokes Rule 11(e)(2). The inquiry then shifts to the subjective question whether "substantial rights" have been affected. The heart of the matter is whether the defendant would have entered the guilty plea had he known that there was a probability of receiving a substantially greater sentence than that recommended in the plea agreement. In this case, it is impossible to know with certainty what this defen-

dant would have done. To avoid having to speculate and engage in retrograde mind reading was one reason for the adoption of Rule 11(e)(2).

■ The district court neither advised Kennell that it was not bound by the government's sentencing recommendations, nor that Kennell could not withdraw his plea. We hold, on this record, that the district court's error cannot be overlooked as a "variance from the procedures required by this rule which does not affect substantial rights." Fed.R.Crim.P. 11(h). Because of the sometimes hurried and hectic nature of the brief conferences between court-appointed counsel and their clients, who may have met only once or twice before, courtroom recitals that the defendant has read the agreement simply do not take the place of the judge's telling the defendant what it means to enter a type (B) guilty plea.

■ Our cases teach that the failure of a district judge to give a defendant, who otherwise does not fully understand his rights, one of several warnings required by Rule 11 during the defendant's plea allocution is reversible error. *United States v. Graibe,* 946 F.2d at 1433 (defendant who is unaware of the substantial uncertainty inherent in entering a type (B) plea "does not enter his plea intelligently and knowingly."); *United States v. Jaramillo–Suarez,* 857 F.2d 1368 (9th Cir. 1988) (reversible error for district court not to advise defendant, prior to accepting plea, of maximum sentence allowed); *Carter v. McCarthy,* 806 F.2d 1373 (9th Cir.1986), *cert. denied,* 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987) (reversible error not to advise defendant of mandatory parole term prior to accepting plea).

The government points to a case, however, where the defendant was aware that the sentencing court was not bound by the recommended sentence outlined in his plea agreement, and we held that the failure of the district court to comply with Rule 11(e)(2) was harmless. *United States v. Otte,* 729 F.2d 1207, 1208 (9th Cir.1984). In *Otte,* decided some years before guideline sentencing, we held that the defendant knew that the court was not bound by a recommendation that sentences be concurrent, and we

affirmed a denial of leave to withdraw a plea. Similarly, we held in *United States v. Sanclemente–Bejarano,* 861 F.2d 206 (9th Cir.1988), that the district court's failure to give a Rule 11 warning to the defendant regarding the maximum penalty he faced was harmless error. Again, the record showed that the defendant had known before pleading guilty that he could be sentenced to a term as long as the one actually imposed. *Id.* at 210. We have said that in the case of "minor" or "technical" errors, Rule 11(h) requires courts to uphold guilty pleas. *Id.; Graibe,* 946 F.2d at 1433.

This case turns on whether the fact that Kennell signed a plea agreement, expressly warning him that he would be unable to withdraw his plea if the sentencing judge rejected the recommended ten-month sentence, constitutes knowledge on his part, so that we can say with certainty that Kennell actually knew what the district judge failed to tell him in the defective Rule 11(e)(2) warning. The trial court treated the matter as a contract case.

The Supreme Court has borrowed from contract law in determining the enforceability of written plea agreements. *See, e.g., Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (defendant entitled to specific performance or rescission of plea agreement). The district court, explaining its denial of Kennell's motion for review of sentencing and judgment, declared that "[t]his court, required always to hold honest citizens to the consequences of their written word, will not exempt this defendant from the same discipline."

However, the district court was applying civil contract law in a very rigidly regulated criminal context. Rule 11 is intended to create a substantially greater certainty that a defendant knows what he is giving up when he pleads guilty than a purchaser of goods knows when he buys something "as is." With regard to written plea agreements, we have held harmless a district court's failure to give a defendant a Rule 11 warning only in cases where the defendant had *actual* knowledge of the consequences of his plea. *Sanclemente–Bejarano,* 861 F.2d at 210; *Otte,*

729 F.2d at 1208. In dictum, the *Graibe* court explained when failure to comply with the specific requirements of Rule 11(e)(2) might be harmless:

> [Even though the] warning required by Rule 11(e)(2) provides an "important safeguard" designed to ensure that the plea is "intelligent" and "knowing", and the omission of such a warning is neither "minor" nor "technical" ... a failure to comply strictly with Rule 11(e)(2) might be harmless if the record showed that the defendant *actually* knew that he would be bound by his plea regardless of the length of the sentence the district judge decided to impose.

*Graibe*, 946 F.2d at 1433 (emphasis added).

■ In making the critical inquiry into what Kennell actually knew at the time he entered his plea, we are limited to the contents of the record of the plea proceeding. *Graibe*, 946 F.2d at 1434. The record must demonstrate that Kennell "was aware of the necessary information at the time he entered his plea." *Id.* During the change of plea hearing, Kennell responded affirmatively to the district court's questioning whether he had read the plea agreement. Kennell also responded affirmatively to all the court's Rule 11 questions: waiver of trial by jury, waiver of the right to confront and cross examine, and understanding of the maximum penalty for the charge against him. However, the district court did not ask Kennell whether he understood that the court was not bound by the recommendation, or that Kennell would not be able to withdraw his guilty plea once entered.

Aside from Kennell's affirmative response to the district court's inquiry into whether he had read the plea agreement, there is no evidence in the record that Kennell understood the difference between a Rule 11(e)(1)(A) or (C) agreement and an 11(e)(1)(B) agreement. The only inquiry required by Rule 11 that the district court omitted during the plea allocution was the warning buried in the pages of the plea agreement, on which the government now relies. Nevertheless, under these circumstances we cannot find the district court's error harmless.

The district court's general questioning of Kennell does not show that Kennell knew specifically that he would be unable to withdraw his plea. That Kennell had read the document at some prior time does not mean that he understood the implications of each of its provisions. Both his counsel and the prosecutor advised Kennell that it was highly unlikely that the judge would reject the government's recommended sentence. Defense counsel specifically told Kennell that, in his twenty years of practicing law, he had never seen a judge depart significantly upward from a joint sentencing recommendation. Believing this advice to be true, Kennell would have had little incentive to dwell on the details of his plea agreement. The record does not leave us with a sense that Kennell was fully aware of the direct consequences of his plea, *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970), or that Kennell's substantial rights were not affected by the district court's failure to give Kennell a Rule 11(e)(2) warning.

The district court's error in failing to give Kennell a Rule 11(e)(2) warning was neither minor nor technical.

The judgment is **VACATED** and the cause is **REMANDED** for proceedings to withdraw the guilty plea, or to enter a new sentence in accordance with the plea bargain.