**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Carlos DOMINGUEZ BENITEZ aka Carlos Dominguez, Defendant–Appellant.**

**No. 00–50181.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2001.

Filed Nov. 25, 2002.

Myra D. Mossman, Santa Barbara, CA, for defendant-appellant Carlos Dominguez Benitez.

Alejandro N. Mayorkas, United States Attorney, John C. Hueston, Assistant United States Attorney, Carmen R. Luege, Assistant United States Attorney, Santa Ana, CA, for plaintiff-appellee United States of America.

John S. Gordon, United States Attorney, Ronald L. Cheng, Assistant United States Attorney, Wesley L. Hsu, Assistant United States Attorney, Los Angeles, CA, for plaintiff-appellee United States of America.

Before: BROWNING, REINHARDT, and TALLMAN, Circuit Judges.

JAMES R. BROWNING, Circuit Judge.

Appellant Carlos Dominguez Benitez ("Benitez") appeals his conviction, entered upon a plea of guilty, and his 120 month sentence for conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. Benitez contends his conviction must be reversed because the district court failed to comply with Fed.R.Crim.P. 11(e)(2) by not informing him he could not withdraw his guilty plea if the court did not accept the sentencing recommendation set forth in the plea agreement. We agree and reverse.

I.

On May 28, 1999, Benitez was charged with conspiracy to possess with intent to distribute and possession with intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1). Benitez entered into a written type (B) plea agreement with the government in which he agreed to plead guilty to the charge of conspiracy to possess with intent to distribute. This charge carried a base offense level of 32. However, the government stipulated to a two-level downward adjustment for the safety valve provision[1] and a three-level downward adjustment for acceptance of responsibility, resulting in an offense level of 27 and a Guideline range of 87 to 108 months.[2] The parties expected Benitez to qualify for the safety valve provision.[3]

1. The safety valve provision states a court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory mandatory minimum if the defendant meets five criteria: (1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon; (3) the offense did not result in death or serious bodily injury; (4) the defendant was not the organizer, leader, manager or supervisor of others and was not engaged in a continuing criminal enterprise; and (5) the defendant has truthfully provided the government all information the defendant has concerning the offense(s) that were part of the same course of conduct. *See* U.S.S.G. § 5C1.2 (1998).

2. The government also agreed to recommend a sentence at the low-end of the Guideline range provided the court calculated Benitez's offense level as 27 or higher.

3. In the plea agreement, the parties stipulated that Benitez satisfied safety valve provision criteria two through four as set forth in Sentencing Guideline § 5C1.2. Because the presentence report had not been completed, the parties had no agreement regarding criteria

The plea agreement stated that Benitez could not withdraw his guilty plea if the district court did not accept the recommended sentence.

At the change of plea hearing, Benitez testified that the agreement had been read to him in Spanish, his native language, that he discussed the agreement with his counsel, and that he understood the agreement. The record, however, reveals that Benitez complained to the court that he lacked communication with his counsel before the change of plea hearing and that he renewed his complaint several times before sentencing. Additionally, Benitez told the court at sentencing that he did not understand the applicable sentencing guidelines or safety valve provision.

At the change of plea hearing, the district court advised Benitez that the court was not a party to the plea agreement, that the plea agreement was not binding on the court, and that Benitez would be sentenced to the mandatory minimum, 120 months, if he was ineligible for the safety valve provision. However, the court failed to inform Benitez he could not withdraw his guilty plea if the court did not accept the recommendation set forth in the plea agreement. The court questioned Benitez's counsel and the prosecutor regarding Benitez's eligibility for the safety valve provision and both said they believed Benitez would qualify.

The presentence report was issued January 31, 2000. The report stated Benitez had a criminal history category of III, rather than I, because he had two prior criminal convictions obtained under aliases. As a result, Benitez did not satisfy criteria one of the safety valve provision and the court was required to impose the mandatory minimum sentence. The report recommended an offense level of 29,

which corresponded to a Guideline range of 108 to 135 months. The mandatory minimum sentence was 120 months.

At the sentencing hearing, the prosecutor informed the court that "the government stands behind [the] plea agreement and its recommendations in every way, except we are precluded from going below [the mandatory minimum] because of the safety valve." Both parties recommended the court sentence Benitez to the mandatory minimum. The court accordingly sentenced Benitez to 120 months.

## II.

Of the three types of plea agreements governed by Rule 11, only "type (B)" agreements prohibit the defendant from withdrawing his guilty plea if he fails to receive the sentence for which he bargained. For this reason, Fed.R.Crim.P. 11(e)(2) expressly requires that if a defendant enters into a type (B) agreement, the court "shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea." Because type (B) agreements embody such a high degree of risk to the defendant, the advisement required by Rule 11(e)(2) is of critical importance. In this case, it is undisputed that Benitez entered into a type (B) plea agreement, and that the district court failed to give the warning required by Rule 11(e)(2).

█ Because Benitez did not object to the district court's error at the change of plea hearing, we review for plain error. *United States v. Vonn,* 535 U.S. 55, 122 S.Ct. 1043, 1046, 152 L.Ed.2d 90 (2002). We may reverse Benitez's guilty plea conviction if: (1) the district court erred, (2) the error was "plain," and (3) the error

one, Benitez's criminal history category. The parties believe Benitez's criminal history category was I, which would qualify him for the safety valve provision.

affected Benitez's "substantial rights." *See United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Even if these three conditions are met, we retain discretion and should not employ it to correct the district court's plain error unless it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.*

## III.

■ There is no question that the district court erred. The district court's error was also plain. "Plain" error is error that is "clear" or "obvious." *Id.* at 734, 113 S.Ct. 1770. At the time of Benitez's change of plea hearing, our precedent clearly required courts to comply with Rule 11(e)(2). See, e.g., *United States v. Kennell*, 15 F.3d 134, 136 (9th Cir.1994); *United States v. Graibe*, 946 F.2d 1428, 1435 (9th Cir.1991).

■ To show the district court's plain error affected his substantial rights, Benitez must prove that the court's error was not minor or technical and that he did not understand the rights at issue when he entered his guilty plea. *United States v. Minore*, 292 F.3d 1109, 1118 (9th Cir.2002). Benitez must satisfy both elements to meet his burden. *Id.*

Benitez has satisfied the first element. We have stated, "[t]he warning required by Rule 11(e)(2) provides an 'important safeguard' designed to ensure that the plea is 'intelligent' and 'knowing,' and the omission of such warning is neither 'minor' nor 'technical.'" *Graibe*, 946 F.2d at 1433.

■ We have since qualified this statement by concluding that if a court imposes the recommended sentence, its Rule 11 error is "merely technical" and does not require the sentence be set aside. *United States v. Chan*, 97 F.3d 1582, 1584 (9th Cir.1996). We based this conclusion on the underlying principle that a defendant's substantial rights are not compromised if

he receives the sentence for which he bargained. *Id.* In this case, although the district court imposed the sentence urged by both parties at the sentencing hearing, the sentence was substantially higher than the one for which Benitez bargained. The district court's error, therefore, was neither "minor" nor "technical."

■ In order to satisfy the second element, Benitez must show he did not understand his rights when he entered his plea. *Minore*, 292 F.3d at 1118. The government argues Benitez cannot meet this burden because the written plea agreement included the Rule 11(e)(2) "warning." In support of its position, the government cites Benitez's testimony at the change of plea hearing that the agreement had been read to him in Spanish, he had discussed it with his attorney, and he understood it.

In *Kennell*, we rejected the same argument. We explained:

Because there is a marked difference between being warned in open court by a district judge and reading some boilerplate language during the frequently hurried and hectic moments before court is opened for the taking of plea and arraignments, the reading of the plea agreement is not a substitute for rigid observance of Rule 11.

*Kennell*, 15 F.3d at 136; *see also United States v. Smith*, 60 F.3d 595, 598–599 (9th Cir.1995).

The government's argument that the Supreme Court's decision in *Vonn* undercut this rule is unpersuasive. *Vonn* held that unless the defendant objects at the plea hearing, he must bear the burden of proving a Rule 11 error affected his substantial rights. 122 S.Ct. at 1046. *Vonn* also held that in assessing the effect of a Rule 11 error on a defendant's substantial rights, reviewing courts may consider the entire record, not just the change of plea transcript. *Id.* These rules need not inevitably

lead to the conclusion that a defendant understood he could not withdraw his plea whenever the Rule 11(e)(2) "warning" is included in the written agreement. The *Kennell* court's concern with respect to the difference between a defendant reading boiler-plate language in an agreement and being advised of a fact in open court is no less valid after *Vonn*. If including the "warning" in the plea agreement were sufficient to inform a defendant he could not withdraw his guilty plea, Rule 11(e)(2) would have little force. *See United States v. Livorsi*, 180 F.3d 76, 81 (2d Cir.1999) ("As the existence of Rule 11(e)(2) itself indicates, the best way to ensure that a defendant is fully aware of the implications of his decision to plead guilty is, after all, for the district judge to give the proper warning in open court").

In this case, the fact that the written plea agreement included the Rule 11(e)(2) "warning" does not establish that Benitez understood he could not withdraw his plea if the court did not sentence him according to its terms. The plea agreement was in English and read to Benitez by an interpreter. Since Benitez was unable to read English, he had no opportunity to examine its provisions himself. Because his counsel and the prosecutor advised him he would in any event probably qualify for the safety valve provision and serve less than the mandatory minimum, Benitez had little incentive to attempt to ascertain the details of the agreement.

The government also argues Benitez cannot show that he did not understand his rights because "the clear import" of statements made by the court show Benitez must have understood that he could not withdraw his guilty plea. The government points out that the court told Benitez he would receive a ten year sentence if he was ineligible for the safety valve provision, that the court was not a party to the plea agreement, and that there were no promises regarding the sentence he would receive, his criminal history category, or his eligibility for the safety valve provision.

We rejected a similar argument in *Graibe*. There we concluded that informing a defendant that a judge is not bound by the government's recommendation and has the discretion to impose a higher sentence "is simply not enough." *Graibe*, 946 F.2d at 1435. We stated:

> The proposition that the court is not bound by the Government's recommendations is distinct from the proposition that the defendant is bound if the court chooses not to follow the recommendation. Informing the defendant of the former does not relieve the court of its responsibility to inform him of the latter.

*Id.* at 1434 (*quoting United States v. Theron*, 849 F.2d 477, 481 (10th Cir.1988)). *See also United States v. DeBusk*, 976 F.2d 300, 307 (6th Cir.1992); *United States v. Iaquinta*, 719 F.2d 83, 85 (4th Cir.1983).

Our recent decision in *Vonn* is clearly distinguishable from this case. In *Vonn*, although the district court failed to comply with Fed.R.Crim.P. 11(c) by not informing the defendant of his right to counsel during the plea colloquy, the defendant was informed of the right both at his initial appearance and at his arraignment. *See United States v. Vonn*, 294 F.3d 1093, 1094 (9th Cir.2002). *See also United States v. Siu Kuen Ma*, 290 F.3d 1002, 1005 (9th Cir.2002) (finding no "plain error" where the district court violated Fed.R.Civ.P. 11(c)(6) by not informing the defendant of a provision in agreement waiving his right to appeal but the prosecutor summarized the terms of the plea, including the waiver provision, in open court). In this case, Benitez was never informed in open court that he could not withdraw his guilty plea if he failed to receive the benefit of his bargain and nothing in the record aside

from the written plea agreement suggests he understood this fact.[4]

Benitez has met his burden of establishing that the district court's error was not merely technical and that he did not understand he could not withdraw his guilty plea if the court did not accept the sentencing recommendation in the plea agreement. Accordingly, the district court's failure to give the Rule 11(e)(2) "warning" affected Benitez's "substantial rights."

 We should exercise our discretion to correct the error if a "miscarriage of justice would otherwise result." *United States v. Sayetsitty*, 107 F.3d 1405, 1413 (9th Cir.1997). Benitez pled guilty with the expectation that the safety valve provision would apply and he would serve a sentence 12 to 33 months shorter than the sentence he received. The parties so stipulated in the written plea and Benitez's counsel and the prosecutor reinforced that expectation at the change of plea hearing. Although the court advised Benitez that it was not bound by the plea agreement, it failed to inform him he could not withdraw his guilty plea if he failed to receive the benefit of his bargain. Holding Benitez to his guilty plea when he was not fully aware of the consequences of the plea would constitute a miscarriage of justice. *See Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir. 1988) ("A plea of guilty is voluntary only if it is entered by one fully aware of the direct consequences of his plea").

## IV.

Because the district court's failure to comply with Fed.R.Crim.P. 11(e)(2) constituted plain error which affected Benitez's substantial rights, and failure to correct the error would result in a miscarriage of justice, we reverse Benitez's conviction and remand to the district court for further proceedings consistent with this opinion and the accompanying memorandum disposition.

REVERSED and REMANDED.

TALLMAN, Circuit Judge, dissenting:

I respectfully disagree with the Court's analysis of the Rule 11(e)(2) issue now that the Supreme Court has decided *United States v. Vonn*, 535 U.S. 55, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002). *Vonn* holds that when a defendant fails to object to a possible Rule 11 violation, the reviewing court must apply the plain error standard of review. Furthermore, Vonn instructs us to examine the record as a whole when conducting this review. Considering the cumulative effect of Benitez's signed plea agreement *and* the questions posed to Benitez during the plea colloquy, no plain error attends his conviction and sentence. We should affirm.

*Vonn* overrules prior Ninth Circuit cases like *United States v. Graibe*, 946 F.2d 1428 (9th Cir.1991), which required us to find a Rule 11 violation if the transcript of the plea colloquy, when viewed by itself, did not provide proof that the defendant understood his fundamental rights that were waived by the plea agreement. *Graibe*, 946 F.2d at 1434. *Graibe* and its progeny, to which the Court's opinion tenaciously clings, held that a district court's failure to inform a defendant that he could

4. For the same reason, our recent decision in *United States v. Morales–Robles*, 309 F.3d 609 (9th Cir.2002) is inapposite to this case. In *Morales–Robles*, the defendant was not informed of his right to persist in his not guilty plea, but he was informed of his rights to a speedy and public trial and to call witnesses on his behalf. Because the right to plead not guilty is subsumed in the right to have a trial, we held that the failure to state specifically that the defendant was entitled to persist in his not guilty plea did not adversely affect his substantial rights. Here, by contrast, the court advised Benitez that it *was not bound* by the plea agreement, but never informed him that *he himself was bound*.

not withdraw his guilty plea, even if the court later rejected the sentencing recommendation, was not harmless error where nothing in the plea proceeding suggested that the defendant understood the binding nature of his plea. *Id.* at 1434–35. Graibe prohibited our consideration of the contents of the written plea agreement when evaluating compliance with Rule 11. Vonn rejects this narrow and overly technical approach by placing the burden on the defendant to establish plain error, and by making it clear that our review is not limited to only the transcript of the plea proceedings. 122 S.Ct. at 1054–55.

In light of *Vonn,* I see no reason why we must cast a blind eye to the contents of the written plea agreement when determining whether Benitez had actual knowledge of the binding nature of his plea, especially where the district judge orally reviewed the bulk of the plea agreement with Benitez during the plea colloquy. Benitez admitted to Judge Stotler that the agreement had been translated into Spanish and explained to him by his lawyer the day before he appeared in court to formally enter his plea. This was no hastily prepared document thrust upon the defendant moments before his court appearance.

After studying the transcript of the change-of-plea proceeding in its entirety, including the written plea agreement specifically reviewed by Judge Stotler with Benitez in the courtroom, I am satisfied that the district court's thorough and repeated warnings (coupled with Benitez's written acknowledgment after careful consultation with his lawyer) regarding his potential ten-year sentence provided adequate notice of the binding nature of his plea. The majority elevates form over substance by looking only to see if the "magic words" were spoken in the colloquy, while the Supreme Court tells us to apply the plain error rule to the record as a whole. This embodies a more reasonable approach in evaluating the cumulative effect of all of the warnings—written and oral—given to Benitez in connection with his plea. Together they conclusively show that Benitez understood ·the binding nature of .his guilty plea.

In this case the district court made it abundantly clear to Benitez that he would receive a mandatory minimum sentence of ten years if he did not qualify for the safety valve exception. Benitez assured the court he understood that decision was the judge's alone. His written plea agreement acknowledges he was bound by the plea even if the probation officer's investigation later revealed that he could not qualify for a safety valve reduction because of his criminal past. His statements in open court only have meaning if Benitez is understood to admit he knew he was bound by his plea. On the complete record, considered as a whole as *Vonn* dictates, I find no plain error and would affirm the sentence imposed.

*Vonn* holds "that a silent defendant [like Benitez] has the burden to satisfy the plain-error rule and that a reviewing court may consult the whole record when considering the effect of any error on substantial rights." 122 S.Ct. at 1046. Vonn rejected the Ninth Circuit's overzealous standard which *Graibe, United States v. Kennell,* 15 F.3d 134 (9th Cir.1994), and *United States v. Odedo,* 154 F.3d 937 (9th Cir.1998), established. *Vonn,* 122 S.Ct. at 1047–48. The Supreme Court made clear that a defendant who remains silent shoulders "the burden to show that his 'substantial rights' were affected." *Id.* at 1048. Our Court once again falls into the same trap for which the Supreme Court criticized us in Vonn; the majority's approach is "more zealous than the policy behind [Rule 11] demands." *Id.* at 1054.

The majority's failure to follow binding precedent is not limited to just Supreme

Court case law. *United States v. Morales–Robles*, 309 F.3d 609 (9th Cir.2002), also controls the case before us. At issue in *Morales–Robles* was whether the district court violated Morales–Robles's substantial rights by failing to verbally advise him during his plea colloquy that he had a right to persist in his plea of not guilty. *Id.* at 610. We held that because "the district court informed [Morales–Robles] of the rights *associated* with his right to go to trial," such as his rights to a speedy trial, to call witnesses, and against self-incrimination, "the district court's failure to *specifically indicate* that he had the right to persist in his plea of not guilty is not reversible under the plain error standard because it did not affect his substantial rights." *Id.* (emphasis added). In other words, the court's verbal statements on other topics necessarily implied the substance of the statement the district court failed to give. Similarly, while the district court here did not specifically indicate that Benitez *could not withdraw his guilty plea*, as shown below, it did make statements that necessarily imply the binding nature of his plea. The majority's holding today cannot be squared with *Morales–Robles*.

The majority assumes that Benitez's plea agreement was entered in haste just prior to the district judge assuming the bench to take his plea. The record shows otherwise. The ten-page plea agreement was the culmination of prior negotiations that led to the signing of an earlier version of the plea agreement on October 12, 1999. That document contained interlineations agreed between the parties, and initialed by Benitez, which were subsequently filed with the court on October 13 as an amended plea agreement. The defendant certified on the signature page:

> This agreement has been read to me in Spanish, the language I understand best, and I have carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement.

Unless the sentencing judge found that Benitez was eligible for a statutory safety valve reduction, paragraph 4 of the plea agreement states that Benitez faced a mandatory minimum sentence of ten years:

> Absent a determination by the Court that defendant's case satisfies the criteria set forth in 18 U.S.C. § 3553(f) and United States Sentencing Guideline § 5C1.2, the statutory mandatory minimum sentence that the Court must impose for a violation of Title 21, United States Code, Section 846, is ten years imprisonment followed by a five-year period of supervised release.

Additionally, paragraph 12 of the plea agreement reads:

> The stipulations in this agreement do not bind either the United States Probation Office or the Court. The Court will determine the facts and calculations relevant to sentencing.

Finally, paragraph 19 states:

> The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations. *Even if the Court ignores any sentencing recommendations, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea,* and defendant will remain bound to fulfill all defendant's obligations under this agreement. No one—not the prosecutor, defendant's attorney, or the Court—can make a

binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

(Emphasis added).

At the plea colloquy, the district judge reviewed the provisions of the written plea agreement, including discussing the substance of its provisions set forth above. She then inquired of the defendant:

THE COURT: You are reminded that absent a determination by the Court that your case satisfies the criteria, which apparently would be a safety valve exception, there is a mandatory minimum sentence that the Court must give you, which is ten years of imprisonment, followed by a five-year period of supervised release.

Do you understand the mandatory nature of the sentence the Court must impose as stated in paragraph 4?

THE DEFENDANT: Yes.

THE COURT: And at this point, has anyone promised you that you will in fact qualify for the so-called safety valve exception?

THE DEFENDANT: No.

THE COURT: *So you realize the Court may give you a ten-year sentence or more, as provided for by law?*

THE DEFENDANT: *Yes.*

THE COURT: *Knowing that, do you still want to go forward with your guilty plea?*

THE DEFENDANT: *Yes.*

THE COURT: You must realize that the statutory maximum sentence provided for by law is actually as much as life imprisonment, a fine of up to $4 million, and a mandatory special assessment which is required, and that is in the sum of $100.

Do you understand the maximum penalties provided for by law?

THE DEFENDANT: Yes.

THE COURT: And knowing those consequences, do you still wish to go to forward with your guilty plea?

THE DEFENDANT: Yes.

THE COURT: Mr. Wilke [defense counsel], is there some reason to believe that this defendant will in fact qualify for the safety valve calculation?

MR. WILKE: Yes, your Honor, there is.

THE COURT: *But you've told him that is still subject to the Court's determination?*

MR. WILKE: *Yes, your Honor.*

THE COURT: All right.

(Emphasis added).

The record shows that Judge Stotler spent substantial time insuring that Benitez entered into the plea knowingly and voluntarily, which satisfies the purpose of Rule 11. She specifically reminded him that any predictions as to whether or not he might be eligible for adjustments, including a safety valve reduction, were predictions regarding Benitez's sentence that were not binding on the probation officer or the sentencing court when it came time to fix a proper sentence. She explained to him, "[T]hese stipulations are not binding on the Court. Do you understand that?" Benitez replied, "I do." Finally, Judge Stotler confirmed that defense counsel, Mr. Wilke, had discussed the Sentencing Guidelines with Benitez "very carefully."

The Court's conclusion that plain error invalidates this conviction ignores the role of conscientious defense counsel in negotiating pleas, and disregards the extensive supporting record before us by myopically focusing on a few missing words actually contained in writing but omitted orally in court. This approach places semantics over substance, and defies the Supreme Court. Because the Court's opinion disre-

gards the analysis we now must follow under *Vonn* as well as our holding in *Morales–Robles*, I respectfully dissent.