**UNITED STATES of America,
Plaintiff,**

**v.**

**Peter A. LOUTOS, Sr., Defendant.**

**No. 01 CR 852–3.**

United States District Court,
N.D. Illinois, Eastern Division.

April 3, 2003.

Edward G. Kohler, Patrick S. Layng, U.S. Attorney's Office, Chicago, IL, for plaintiff.

Robert A. Novelle, Serpico, Novelle & Navigato, Ltd., Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

In October 2001, an indictment was returned charging defendant Peter Loutos with eight counts of wire fraud in violation of 18 U.S.C. § 1343 and 2, one count of conspiring to commit money laundering offenses in violation of 18 U.S.C. § 1956(h), and seven substantive counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), 1957, and 2.[1] However, on October 30, 2002, shortly before Loutos and five codefendants were scheduled to begin trial, a superseding information was filed and, in accordance with a written plea agreement, Loutos pleaded guilty to one count of making a false statement on an application for the purpose of influencing a federally insured bank in violation of 18 U.S.C. §§ 1014 and 2.[2] The provisional Sentencing Guidelines calculations contained in the Plea Agreement indicated a Guideline sentencing range of 0–6 months' incarceration. At that time of the plea, the court deferred its decision to accept or reject the Plea Agreement. As had been scheduled, the trial of Loutos's codefendants began on November 4, 2002. On

---

**1.** The wire fraud scheme and related offenses will be referred to as "investment fraud." For further detail of the charges, see *United States v. Loutos*, 2003 WL 168627 *1–2 (N.D.Ill. Jan.24, 2003) (*"Loutos I"*).

**2.** This charge and conduct will be referred to as "bank fraud."

December 11, 2002, the jury returned a verdict of guilty as to all counts and defendants, except that they returned a verdict of not guilty as to one count of violating § 1957.

After receiving a copy of the presentence report ("PSR") which also calculated a sentencing range of 0–6 months, a minute order dated December 27, 2002 was entered requiring that the parties address some additional sentencing issues. Additionally, the January 22, 2003 sentencing date was vacated and a status hearing was instead held on January 23, 2003. At the status hearing, the court stated it was accepting the Plea Agreement. The court also informed the parties that it would issue a memorandum opinion informing the parties in greater detail as to additional sentencing issues that would need to be addressed and also setting a schedule for the parties filing memoranda and the probation officer preparing a supplemental or revised PSR. No new date was set for the actual sentencing.[3] Later that day, *Loutos I* was issued. *Loutos I* points to a number of issues that had to be considered in determining defendant's sentencing range, but leaves open the resolution of those issues. Potentially, resolution of those issues could result in a sentencing range substantially higher than the 0–6 month range contained in the initial PSR.

On February 27, 2003, Loutos filed a motion to vacate his guilty plea. Loutos raises four grounds for withdrawing his guilty plea: (1) Defendant has the absolute right to withdraw his guilty plea because the court has not actually accepted his plea in that U.S.S.G. § 6B1.1 precludes accepting the plea until after the supplemental or revised PSR has been considered. (2) Under Fed.R.Crim.P. 11, defendant was not properly advised by the court prior to pleading guilty. (3) Defendant has a fair and just reason for withdrawing the plea because of a mutual mistake of the parties as to the correct guideline calculation. (4) Defendant has a fair and just reason for withdrawing the plea because he is legally innocent of the bank fraud. Each of these grounds will be addressed in turn.

### I. ACCEPTANCE OF GUILTY PLEA

Defendant's Plea Agreement provides that, following sentencing, the government will move to dismiss the charges (investment fraud) contained in the original indictment. Plea Agreement ¶ 19. Therefore, the Plea Agreement is of the type described in current Fed.R.Crim.P. 11(c)(1)(A) (formerly 11(e)(1)(a)). Defendant contends that, in accordance with Sentencing Guidelines 6B1.1(c) and 6B1.2(a), the court should have deferred acceptance of the plea until after reviewing the supplemental or revised PSR. Defendant further contends that the court's purported acceptance of the guilty plea was therefore without effect and thus he is free to withdraw his plea. Defendant's argument fails to recognize the distinction between accepting a guilty plea and accepting a plea agreement. *See United States v. Hyde*, 520 U.S. 670, 674, 117 S.Ct. 1630, 137 L.Ed.2d 935 (1997).

At the October 30, 2002 plea colloquy, the following was stated:

Court: Now, do you understand that your plea of guilty here today will be on the basis of an offer to the court, but a presentence investigation will be undertaken to examine the plea and the background here?

Do you understand that?

---

**3.** At a March 26, 2003 status hearing, the court indicated that, *if* the motion to withdraw were to be subsequently denied, sentencing of Loutos would be held on May 14, 2003 and the supplemental or revised PSR of the probation officer should be filed by April 16, 2003.

Loutos: Yes, sir.

Court: And do you understand that I am not going to grant or deny your request to plead guilty today? I will not do that until I have seen the presentence investigation report. You will have a chance to see it, you will have a chance to comment on it.

Do you understand that?

Loutos: Yes, sir.

Oct. 30, 2002 Tr. at 9–10.

After a few questions verifying the Plea Agreement, defendant's signature thereon, and his having read it, the court made reference to the Sentencing Guidelines and statutory maximums and then stated:

And as this is a guideline case, the preliminary calculation specifies the period of incarceration that I believe counsel said to be zero to six months.

I, again, sir, caution you that I have not made any such determination and will not make it until I have decided to accept the plea agreement and make the determination that it should be as stated in the agreement or in the presentence report as the case may be.

All right, now then, has anyone forced you to plead guilty here today?

*Id.* at 11.

At the conclusion of the colloquy, immediately after defendant admitted his guilt, the court stated:

Since you acknowledge that you are, in fact, guilty as charged in the criminal information, and you have freely waived indictment, and you have had the assistance of counsel, you know your right to a trial, you know what the maximum possible punishment is, and you are voluntarily waiving indictment and pleading guilty, I will accept your waiver of in-

dictment and your plea of guilty, and I will take under consideration whether or not to enter a judgment after I have seen a presentence investigation.

*Id.* at 14–15.

The minute order that was thereafter issued stated in part:

Defendant enters guilty plea to Count 1 of the superseding information. Defendant informed of rights. Court defers its acceptance or rejection of the plea agreement as stated in open court.

Order dated Oct. 30, 2002 (Docket Entry 154).

At the January 23, 2003 status hearing, which was after receiving the PSR, the court stated near the beginning of the hearing that it would accept the Plea Agreement and proceed from that point forward on the basis of the plea of guilty to the bank fraud charge. The minute order that was thereafter issued stated in part: "Hearing held. Court accepts the plea agreement. Judgment of guilty entered on Count 1 of the superseding information." Order dated Jan. 23, 2003 (Docket Entry 231). In *Loutos I,* which was issued the same day, it was stated: "After hearing the evidence that was presented at the trial of Loutos's codefendants and having considered the PSR, submissions of the parties, and possible Guideline results, on January 23, 2003, the court accepted Loutos's plea of guilty. However, a determination of the appropriate sentencing range will only be made after considering additional facts not presently disclosed in the Plea Agreement or PSR." 2003 WL 168627 at *1.

First, it should be recognized that the Federal Rules of Criminal Procedure, including Rules 11 and 32, were amended effective December 1, 2002.[4] The 2001

---

**4.** The version prior to amendment will be referred to as the "2001 Rules," "2001 version," or by including "(2001)" in the citation. The version after the amendment will be referred to as the "2002 Rules," "2002 version," or by including "(2002)" in the citation.

Rules were in effect when defendant pleaded guilty in October 2002. The 2002 Rules are presently in effect and were in effect as of the January 23, 2003 status hearing and ruling and when defendant filed his motion to withdraw his plea. In the 2001 Rules, Rules 11(c), 11(d), and 11(f) applied to accepting a guilty plea, whereas Rule 11(e) applied to accepting or rejecting a plea agreement. In the 2002 Rules, Rule 11(b) applies to accepting a guilty plea and Rule 11(c) applies to accepting or rejecting a plea agreement. In the 2001 Rules, Rule 32(e) applied to withdrawal of a guilty plea. Under the 2002 Rules, procedures for withdrawing a guilty plea are now codified as Rules 11(d) and 11(e).

The 2002 version of Rule 11(b) provides for essentially the same plea acceptance procedure as under the 2001 Rules, but does modify the list of and stylistic description of issues on which the defendant is to be advised and questioned. For example, whereas Rule 11(c)(1) (2001) (emphasis added) referred to advising the defendant as to "the maximum possible penalty provided by law, including *the effect* of any ... supervised release term," Rule 11(b)(1)(H) (2002) provides that the defendant should be advised as to "any maximum possible penalty, including ... term of supervised release." *See also* Advisory Committee Notes for 2002 Amendments to Fed. R.Crim.P. 11, 2d & 3d ¶¶ (hereinafter "2002 Committee Notes").

As to the procedure for accepting or rejecting a plea agreement, the 2002 version of Rule 11(c) has no substantive changes applicable to this case[5] and was not intended to change the practice for accepting plea agreements. However, the amendments do attempt to make clear the distinction and interplay between consider-

ing, accepting, and rejecting a guilty plea and a plea agreement.

Amended Rules 11(c)(3) to (5) address the topics of consideration, acceptance, and rejection of a plea agreement. The amendments are not intended to make any change in practice. The topics are discussed separately because in the past there has been some question about the possible interplay between the court's consideration of the guilty plea in conjunction with a plea agreement and sentencing and the ability of the defendant to withdraw a plea. *See United States v. Hyde,* 520 U.S. 670, 117 S.Ct. 1630, 137 L.Ed.2d 935 (1997) (holding that plea and plea agreement need not be accepted or rejected as a single unit; "guilty pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separated in time."). Similarly, the Committee decided to more clearly spell out in Rule 11(d) and 11(e) the ability of the defendant to withdraw a plea. *See United States v. Hyde, supra.*

2002 Committee Notes, 6th ¶.

Rule 11(d) (2002) now clarifies when and on what basis a plea of guilty may be withdrawn, recognizing the distinction between accepting a guilty plea and accepting a plea agreement. Formerly, Rule 32(e) (2001) provided in part:

If a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason.

Rule 11(e)(4) (2001) had provisions requiring the court to advise the defendant of the opportunity to withdraw a guilty plea in the event a plea agreement is rejected.

---

**5.** Rule 11(c)(1)(A) (2002) includes a new provision expressly covering promises not to

bring additional charges. Such a promise is not contained in Loutos's Plea Agreement.

Although not expressly stated in the Rule, the Seventh Circuit has held that Rule 32(e) (2001) permitted defendants to withdraw a guilty plea of right, without the need of showing a fair and just reason, if the court had not yet accepted the guilty plea. *United States v. Shaker,* 279 F.3d 494, 497 (7th Cir.2002); *United States v. Merriweather,* 294 F.3d 930, 931 (7th Cir. 2002).[6] Some of the other circuits have held otherwise regarding Rule 32(e) (2001). *See Shaker,* 279 F.3d at 497 ("Indeed, the Fifth, Sixth, and Eighth Circuits have concluded that acceptance [of the plea] is largely irrelevant and that Rule 32 applies whenever the district court has conducted a thorough Rule 11 colloquy—even if the court defers acceptance."). In contrast, where the guilty plea had been accepted, but the district court had not yet determined whether to accept the Rule 11(e)(1)(A) (2001) plea agreement, the Supreme Court held that the defendant was required to satisfy Rule 32(e) (2001)'s "fair and just reason" standard in order to withdraw his guilty plea. *Hyde,* 520 U.S. at 671–80, 117 S.Ct. 1630. *See also United States v. Tyndale,* 209 F.3d 1292, 1296 (11th Cir.2000). *Compare also United States v. Standiford,* 148 F.3d 864, 867–68 (7th Cir.1998) (where guilty plea has been accepted, but acceptance of plea agreement is reserved, defendant's motion to withdraw from the plea agreement itself, but not withdraw the guilty plea, still required satisfaction of Rule 32(e) (2001)'s "fair and just reason" standard).

Rule 11(d) (2002) now expressly provides that a guilty plea may be withdrawn of right prior to the plea itself being accepted by the court:

A defendant may withdraw a plea of guilty or nolo contendere:

(1) before the court accepts the plea, for any reason or no reason; or

(2) after the court accepts the plea, but before it imposes sentence if:

(A) the court rejects a plea agreement under Rule 11(c)(5); or

(B) the defendant can show a fair and just reason for requesting the withdrawal.

Rule 11(d) (2002) also acknowledges that accepting the guilty plea is distinct from accepting the plea agreement in that Rule 11(d)(2)(A) (2002) refers to a situation where the plea has been accepted but the plea agreement is rejected.

■■■ Since Loutos's motion to withdraw was filed in February 2003, Rule 11(d) (2002) applies. However, as regards the issue presently being considered, Rule 11(d) (2002) is no different from Rule 32(e) (2001). Just as *Hyde, supra,* held regarding Rule 32(e) (2001), Loutos is not entitled to withdraw his guilty plea of right ("for any reason or no reason") under Rule 11(d)(1) (2002) simply because his Plea Agreement has not yet been accepted. Loutos is only entitled to withdraw his guilty plea pursuant to Rule 11(d)(1) if the guilty plea itself had not already been accepted. Additionally, nothing changed between Rule 32(e) (2001) and Rule 11(d) & (e) (2002) that would affect the holding of *Standiford, supra.* Thus, withdrawal from the Plea Agreement itself also would not be permitted simply because the Plea Agreement itself had not yet been accept-

---

**6.** In *Shaker,* the district court found the defendant's plea to be knowing, voluntary, and supported by a sufficient factual basis, but then stated: "I am deferring my decision on acceptance or rejection of your plea of guilty and your Plea Agreement until after I've had an opportunity to study the Presentence Re-

port. If your plea of guilty and your Plea Agreement are then accepted, I will so advise you." *See id.* at 495–96. In *Merriweather,* 294 F.3d at 931, the Seventh Circuit states that "[t]he district court reserved accepting the plea until the pre-sentence report was prepared."

ed where the guilty plea had already been accepted.

■ Sentencing Guideline 6B1.1(c),[7] the Policy Statement upon which Loutos relies, provides: "The court *shall defer* ... the court's decision to accept or reject *any plea agreement* pursuant to Rule[ ] 11(e)(1)(A) ... until there has been an opportunity to consider the presentence report, unless a report is not required...."[8] Although the Plea Agreement was not accepted until January 23, 2003, after consideration of the PSR, Loutos contends the court has not complied with Guideline 6B1.1(c) because the Plea Agreement was accepted prior to also considering the supplemental or revised PSR that *Loutos I* required be submitted.

It need not presently be decided whether the court failed to fully comply with Guideline 6B1.1(c) in accepting the Plea Agreement nor whether any violation of that Guideline would cause the stated acceptance of the Plea Agreement to be without effect. Even assuming the acceptance of the Plea Agreement was without effect,[9] defendant would not have the right to withdraw his guilty plea under Rule 11(d)(1) (2002) because the acceptance of defendant's plea of guilty would still be in place.

At one point during the October 30 plea colloquy, the court indicated it would not be granting or denying the "request to plead guilty today." Oct. 30, 2002 Tr. at 10. Viewed in the context of the immediately preceding question, *id.* at 9–10, as well as the questions that followed, this statement should be understood as referring to the request to plead guilty in accordance with the terms of the Plea Agreement; that is, it is actually a reference to accepting the Plea Agreement, not a reference to accepting the guilty plea itself. But even if the statement could be construed as indicating the court was contemplating deferring acceptance of the guilty plea itself, the court did not thereafter defer acceptance of the guilty plea. After defendant's admission of guilt, the court expressly stated it was accepting the plea of guilty. *Id.* at 15. Additionally, the court issued an order stating the plea of guilty was entered and stating the acceptance or rejection of the Plea Agreement was deferred. On October 30, 2002, the court accepted defendant's plea of guilty. Moreover, on January 23, 2003, which was still prior to defendant's motion to withdraw his guilty plea, the court stated both at the status hearing and in the accompanying minute order that it accepted the

7. This Guideline has not been amended since first implemented in November 1987. The latest Guidelines Manual is from November 1, 2002 and therefore cites to the Federal Rules of Criminal Procedure in effect prior to the December 1, 2002 amendments to the Criminal Rules.

8. Unlike the mandatory "shall defer" language in the Policy Statement, Rule 11(c)(3)(A) (2002), like Rule 11(e)(2) (2001), provides that the court "may ... defer" acceptance of the plea until after there has been an opportunity to review the PSR. The Seventh Circuit has indicated that the mandatory language of the Guideline controls. *See United States v. Ritsema*, 89 F.3d 392, 397–98 (7th Cir.1996); *Standiford*, 148 F.3d at 867.

9. No opinion is presently expressed regarding whether the acceptance of the Plea Agreement, which occurred after examination of the initial PSR, is without effect. Neither is any opinion expressed regarding whether, even if the Plea Agreement has effectively been accepted, the court still retains discretion to reject it after considering the supplemental or revised PSR and making a determination as to the appropriate sentencing range. *See Ritsema*, 89 F.3d at 399–400 & nn. 6–7. If the court subsequently determines the Plea Agreement should be rejected and that it still has authority to reject it, in accordance with Rules 11(c)(5) and 11(d)(2)(A) (2002), the court will so inform the parties and provide defendant the opportunity to withdraw his guilty plea.

Plea Agreement and also stated in the minute order that a judgment of guilty was entered. In the Memorandum Opinion issued that same day, the court reiterated that it had accepted the guilty plea itself. *Loutos I*, 2003 WL 168627 at *1.

It is clear that, prior to the February 27, 2003 motion to withdraw his plea, defendant's plea of guilty had been accepted. Therefore, for the reasons previously discussed, defendant does not have the right to withdraw his plea under Rule 11(d)(1) (2002). Instead, Rule 11(d)(2)(B) (2002) applies to defendant's motion to withdraw his guilty plea, which requires that he have "a fair and just reason for requesting the withdrawal."

## II. WITHDRAWAL OF GUILTY PLEA

█ Rule 11(D)(2)(B) (2002), as had Rule 32(e) (2001), provides that a defendant may withdraw a guilty plea on a showing of a "fair and just reason." This "is not a free-swinging backdoor," *United States v. Hodges*, 259 F.3d 655, 660 (7th Cir.2001). A defendant does not have an absolute right to withdraw a guilty plea. *United States v. Wallace*, 276 F.3d 360, 366 (7th Cir.), *cert. denied*, 536 U.S. 924, 122 S.Ct. 2592, 153 L.Ed.2d 781 (2002). Instead, he or she must bear a heavy burden of persuasion. *United States v. Underwood*, 174 F.3d 850, 852 (7th Cir. 1999); *Standiford*, 148 F.3d at 868–69; *United States v. Jones*, 87 F.3d 954, 955 (7th Cir.1996); *United States v. Rinaldi*, 246 F.Supp.2d 992, 994 (C.D.Ill.2003). After a knowing and voluntary Rule 11 colloquy, the defendant faces an uphill battle in demonstrating a fair and just reason. *Hodges*, 259 F.3d at 660; *United States v. Pike*, 211 F.3d 385, 390 (7th Cir.2000); *United States v. Schilling*, 142 F.3d 388,

398 (7th Cir.1998); *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir.1995).

### A. Adequacy of the Rule 11 Inquiry

Loutos contends he is entitled to withdraw his plea because, during the Rule 11 colloquy, he was not sufficiently advised as to all the factors listed in Rule 11(c) (2001).[10] He contends he was not adequately advised regarding (1) his waiver of the right to appeal or collaterally attack the sentence, *see* Fed.R.Crim.P. 11(c)(6) (2001); (2) that the court can depart from guidelines and may order restitution, *see id.* 11(c)(1); (3) the effect of any supervised release term, *see id.*; (4) his right to counsel at trial, *see id.* 11(c)(3) (2001); and (5) that he could not be compelled to testify against himself, *see id.* Loutos also contends that he should have been advised that, if the court did not accept the Rule 11(e)(1)(B) (2001) sentencing recommendation contained in the Plea Agreement, he would not be entitled to withdraw his plea. *See id.* 11(e)(2). There is no express contention that failure to advise defendant as to any of these issues resulted in his plea being involuntary or even unknowing. Neither is there any express contention that, had he been expressly advised regarding these issues, he would not have pleaded guilty.

█ "The whole point of the Rule 11 colloquy is to establish that a plea was knowingly and voluntarily made." *United States v. Williams*, 184 F.3d 666, 670 (7th Cir.1999) (quoting *Standiford*, 148 F.3d at 868). *See also* Fed. R. Crim P. 11(c), 11(d) (2001); Fed.R.Crim.P. 11(b)(1), 11(b)(2) (2002).

> . . . In determining whether the defendant's plea was voluntary, we con-

---

**10.** The plea colloquy itself occurred before the December 1, 2002 amendments to Rule

**11.**

clude whether, after "looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights." *United States v. Wagner,* 996 F.2d 906, 912 (7th Cir. 1993). "The Supreme Court has cautioned that, in reviewing Rule 11 proceedings, '[m]atters of reality, and not mere ritual, should be controlling.'" *United States v. Richardson,* 121 F.3d 1051, 1057 (7th Cir.1997) (quoting *McCarthy v. United States,* 394 U.S. 459, 467–68 n. 20, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)) (internal quotations and citation omitted). "In other words, courts 'must strike a balance between a "crabbed interpretation" that exults form over substance, and an overly technical review which sets "a procedural trap for the government." ' " *Id.* (quoting *United States v. Saenz,* 969 F.2d 294, 296 (7th Cir. 1992) (citation omitted)) (emphasis added).

... The Rule 11 hearing need not provide the defendant with a "detailed course on criminal procedure:

> We have never required strict adherence to the strictures [of Rule 11]; rather, the focus is whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights. We have not and do not intend to mandate a specific format or dialogue to be followed in a Rule 11 hearing. If the defendant is fully apprised of his rights and the consequences of his actions, and he knowingly and voluntarily enters into the entire contents of the plea agreement, the hearing is proper."

*[United States v.] Ranum,* [96 F.3d 1020,] 1024 [ (7th Cir.1996) ] (citing *United States v. Messino,* 55 F.3d 1241, 1248 (7th Cir.1995)) (citations and quotations omitted).

*United States v. Elkins,* 176 F.3d 1016, 1021 (7th Cir.1999).

■ Thus, when a defendant moves to withdraw his or her guilty plea based on failure to satisfy the advice requirements of Rule 11, the focus is on whether the guilty plea was knowing and voluntary. *See Standiford,* 148 F.3d at 868.

Accordingly, "in a Rule 32 proceeding, when the court is asked to reevaluate the defendant's intent at the time of the entry of a plea, that reviewing court's ultimate determination of the defendant's state of mind depends, in large part, on what defendant said during the Rule 11 colloquy." [*United States v. Ellison,* 835 F.2d 687, 693 (7th Cir. 1987).] Moreover, the record that is created at a Rule 11 hearing is accorded a "presumption of verity." *United States v. Trussel,* 961 F.2d 685, 689 (7th Cir.1992). Thus, a defendant who files a motion to withdraw his plea on the ground that his plea was not knowing and voluntary, contrary to his assertions at the Rule 11 proceeding, faces a heavy burden of persuasion. *See Ellison,* 835 F.2d at 693. " 'The district court is generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions at the Rule 11 hearing.' " *United States v. Messino,* 55 F.3d 1241, 1248 (7th Cir.1995) (quoting *United States v. Groll,* 992 F.2d 755, 758 (7th Cir.1993)).

*Standiford,* 148 F.3d at 868–69.

■ In considering the circumstances surrounding the plea, the background of the defendant may be considered. *See United States v. Hauptman,* 111 F.3d 48, 51 (7th Cir.1997). As was revealed during the plea colloquy, Loutos was 70 years old, graduated from law school in 1964, and also had an undergraduate degree in pharmacy. Oct. 30, 2002 Tr. at 5. As had been

disclosed during prior proceedings in this case (including during hearings on motions to travel outside the jurisdiction),[11] Loutos was still a practicing attorney. Loutos should be considered to have a substantial level of sophistication, *cf. Hauptman*, 111 F.3d at 51, including some familiarity with legal and court proceedings. Though there was no indication that his legal experience included working on criminal matters, Loutos may be presumed to be familiar with contracts and the need to carefully read documents that are contractual in nature and signed by the party.

Except as to those issues he notes, defendant does not dispute that, during the plea colloquy, he was fully and adequately advised as to all other issues set forth in Rule 11(c) (2001). This included being advised as to the nature of the charges, maximum penalties, a right to counsel, the right to plead not guilty, the right to trial, the right to trial by a jury, and the right to confront and cross examine witnesses. Defendant was also advised as to additional issues that are not specifically included in Rule 11(c) (2001). Further, an adequate factual basis for the plea was established during the plea colloquy. *See* Oct. 30, 2002 Tr. at 12–14; Fed.R.Crim.P. 11(f) (2001). Additionally, at the plea colloquy, defendant affirmatively responded that he had read the Plea Agreement and discussed it with his attorney. Oct. 30, 2002 Tr. at 10. In the Plea Agreement itself, "[d]efendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement." Plea Agreement ¶ 23. At the plea colloquy, defendant also affirmatively responded that his plea was voluntary. Oct. 30, 2002 Tr. at 11–12. There is no present contention that defendant was actually unaware of or could not understand any of the contents of his Plea Agreement. There is also no present contention that defendant's plea was not knowing and voluntary or that he would not have pleaded guilty had he been more fully advised. *See Elkins*, 176 F.3d at 1022. Instead, citing to *United States v. Vonn*, 535 U.S. 55, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002), defendant asserts that, as to any failure to advise regarding a particular Rule 11(c) (2001) requirement, the burden is on the government to show that the omission was harmless error. Defendant asserts that the government has not met this burden and, therefore, a hearing is required regarding harmless error.

■ Rule 11(h) (2001), in effect at the time of the plea colloquy, provided: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."[12] The Supreme Court has construed Rule 11(h) (2001) as incorporating a harmless error standard. *Vonn*, 122 S.Ct. at 1048. *See* Fed.R.Crim.P. 52(a) (2001).[13] In *Vonn*, the Supreme Court considered whether, as to a Rule 11 issue raised for the first time on appeal, the plain error provisions of Rule 52(b) applied to the Rule 11(h) harmless error determination. *Vonn*, 122 S.Ct. at 1048–54, held that the plain error standard applied, including that the defendant bears the burden of showing substantial

---

**11.** In determining whether a plea was knowing and voluntary, the court is not limited to considering only the plea hearing itself. *United States v. Vonn*, 535 U.S. 55, 122 S.Ct. 1043, 1054–55, 152 L.Ed.2d 90 (2002).

**12.** Rule 11(h) (2002) now provides: "A variance from the requirements of this rule is

harmless error if it does not affect substantial rights."

**13.** The December 1, 2002 amendments to Rule 52 were "stylistic only." 2002 Committee Notes to Fed.R.Crim.P. 52.

rights were affected. In reaching that conclusion, the court indicated that, absent plain error review, the government would bear the burden of showing Rule 11(h) (2001) harmless error just as it bears the burden of showing Rule 52(a) harmless error. *See Vonn*, 122 S.Ct. at 1048. *See also United States v. Jimenez–Dominguez*, 296 F.3d 863, 866 (9th Cir.2002), *cert. denied*, 537 U.S. 1166, 123 S.Ct. 984, 154 L.Ed.2d 905 (2003) (*dictum*). Here, however, defendant pleaded guilty on October 30, 2002. He did not raise any Rule 11 errors until moving to withdraw his guilty plea almost four months later. Where a defendant, particularly one represented by an attorney at the plea colloquy, does not raise any Rule 11 errors at the time of the plea colloquy itself, the plain error rule applies and defendant bears the burden of showing a harmful effect. *See Vonn*, 122 S.Ct. at 1054 & n. 10; *id.* at 1057 (Stevens, J., concurring in part, dissenting in part); *United States v. Dominguez Benitez*, 310 F.3d 1221, 1225 (9th Cir.2002); *id.* at 1227 (Tallman, J., dissenting). Defendant bears the burden of showing that any Rule 11 violation that occurred affected a substantial right and thus harmed him.

But even if the burden were on the government to show that any Rule 11 violations were harmless because the violations did not prevent defendant's guilty plea from being knowing and voluntary or affect his decision to plead guilty, the evidence before the court meets that burden with there being no contrary evidence (nor even a contrary allegation). *See United States v. Driver*, 242 F.3d 767, 769 (7th Cir.2001), *cert. denied*, 535 U.S. 926, 122 S.Ct. 1294, 152 L.Ed.2d 207 (2002) ("A [Rule 11] violation would be harmless when the defendant already knew the information omitted by the judge—when, for example, his own lawyer had told him about cross-examination, or the written plea agreement had specified the maximum possible punishment."). With limited exception discussed below, all the alleged omitted Rule 11 advice was expressly set forth in the Plea Agreement. Defendant acknowledged in the Plea Agreement itself that he had read and understood the Plea Agreement. Defendant also stated, under oath during the plea colloquy, that he read the Plea Agreement and adequately discussed it with his attorney. Therefore the evidence before the court only supports that defendant was aware of all the issues for which there was not strict compliance with Rule 11(c) or 11(e)(2). *Cf. United States v. Diaz–Vargas*, 35 F.3d 1221, 1225 (7th Cir.1994). Thus, defendant had all the knowledge called for by Rule 11 and the only reasonable inference to draw therefrom is that defendant still would have pleaded guilty if he had also been explicitly advised as to these issues during the plea colloquy. The evidence and allegations before the court do not involve any material factual issue that requires there be a hearing on the alleged Rule 11 errors.

■ Considering each of the claimed Rule 11 errors in turn, the court finds as follows. Defendant contends he was not advised that he could be ordered to pay restitution. *See* Fed.R.Crim.P. 11(c)(1) (2001). However, defendant was advised that, under the penalty provisions of the applicable statute, he could be ordered to pay restitution. Oct. 30, 2002 Tr. at 11. Paragraphs 8 and 17 of the Plea Agreement also set forth that restitution could be ordered. Defendant was adequately advised as to the possibility of restitution.

■ Defendant contends he was not advised of "the right against compelled self-incrimination." Fed.R.Crim.P. 11(c)(3) (2001). However, he responded affirmatively to the questions: "Do you understand that you would have a right to testify if you wished to do so? However, if you wish to remain silent, your silence could not be used against you? Do you

understand that?" Oct. 30, 2002 Tr. at 8–9. Being able to remain silent and not have it used against the defendant is the right against compelled self-incrimination. The words "compelled" and "self-incrimination" need not be ritualistically invoked.[14] At the plea colloquy, defendant was adequately advised as to the right against self-incrimination. Additionally, defendant does not deny that he read and was aware of the Plea Agreement's statement that "[a]t a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify." Plea Agreement ¶ 10(e).

▮ The right to counsel at trial was not explicitly set forth during the plea colloquy nor is it explicitly set forth in the Plea Agreement. At the plea colloquy, though, it was stated that it had to be determined and it was found that defendant had the assistance of counsel for the plea proceedings. *See* Oct. 30, 2002 Tr. at 3–4, 10, 14. Also, without expressly stating defendant had a right to counsel, it was mentioned that defendant might be represented by an attorney at trial. *See id.* at 9 ("You *or your lawyer* have a right to ask to have persons" excluded from the jury.). *See also* Plea Agreement ¶¶ 10(b) ("Defendant *and his attorney* would have a say in who the jurors would be"), 10(d) (defendant's *"attorney* would be able to cross-examine" witnesses at trial). Additionally, defendant has been represented by an attorney throughout this case and the trial of this case was scheduled to start less than a week after the plea colloquy. Defendant's attorney was actively engaged in preparing for trial until very shortly before the change of plea. Defendant, who personally appeared (along with his attorney) at

many of the status hearings in this case was well aware that his attorney would be representing him at trial. Also, defendant is himself an attorney who would be well aware that he could be represented by an attorney at trial. The evidence before the court only supports that defendant was aware that, had he gone to trial, he could be represented by an attorney. Therefore, no hearing need by held to determine if defendant was adequately aware of this advice nor to determine if failing to explicitly advise him of it during the plea colloquy affected his decision to plead guilty.

▮ Defendant contends that the court failed to give the advice required by Rule 11(e)(2) (2001), which provides: "If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea." Such a plea agreement is one in which "the attorney for the government will: (B) *recommend,* or agree not to oppose the defendant's request for a *particular* sentence or sentencing range, or that a *particular* provision of the Sentencing Guidelines, or policy statement, or sentencing factor is or is not applicable to the case. Any such recommendation or request is not binding on the court." Fed. R. Crim P. 11(e)(1)(B) (2001) (emphasis added). At the plea colloquy, defendant was advised that the court would make the final decision as to an appropriate sentence, but he was not advised that he could not withdraw his guilty plea if the court reached a conclusion as to the applicable sentencing range that was different from that contained in the Plea Agreement or if the court did not follow a sentencing recommendation contained in the Plea Agree-

---

**14.** Before being placed under oath at the plea colloquy, defendant was also advised that by testifying at the plea colloquy, "you will be waiving your right not to testify against yourself. Some of your answers will be incriminating, . . . ." Oct. 30, 2000 Tr. at 4.

ment. *See* Oct. 30, 2002 Tr. at 12. If the Plea Agreement was a Rule 11(e)(1)(B) (2001) agreement, this advice did not comply with Rule 11(e)(2) (2001). *See Hauptman,* 111 F.3d at 51; *Diaz–Vargas,* 35 F.3d at 1224–25; *United States v. Martinez,* 277 F.3d 517, 530–31 (4th Cir.), *cert. denied,* 537 U.S. 899, 123 S.Ct. 200, 154 L.Ed.2d 169 (2002).

The Plea Agreement in this case, however, is not a Rule 11(e)(1)(B) (2001) agreement that would have triggered the advice requirement of Rule 11(e)(2) (2001). The Plea Agreement provides that the court is not bound by any sentencing recommendation or calculation of the parties. *See* Plea Agreement ¶¶ 6(e), 16. The Plea Agreement does not contain any citation to Rule 11(e)(1)(B) (2001) nor was that Rule mentioned during the plea colloquy. Most importantly, the government does not agree to recommend a *particular* sentence, sentencing range, or application of a *particular* sentencing provision, nor does it agree not to oppose any particular request of defendant. Paragraph 15 of the Plea Agreement does provide that, "[a]t the time of sentencing, the government shall recommend a sentence within the applicable guidelines range." That, however, does not require that the government recommend a *particular* sentencing range nor does it require that the government recommend a *particular* sentence or even a *particular* spot within an unspecified range. *Compare United States v. Oyegbola,* 961 F.2d 11, 14 (1st Cir.1992) (agreement to recommend a sentence at the lowest end of the applicable guideline range qualified as "recommendation . . . for a particular sentence" under Rule 11(e)(1)(B) [15]); *United States v. Ewing,* 957 F.2d 115, 118 (4th Cir.), *cert. denied,* 505 U.S. 1210, 112 S.Ct. 3008, 120 L.Ed.2d 882 (1992) (same). Arguably, the stated stipulations and agreement regarding the preliminary Guideline calculations, *see* Plea Agreement ¶ 6, implicitly constitute an agreement not to oppose any request by defendant to apply the indicated sentencing range.[16] *Compare United States v. Bennett,* 990 F.2d 998, 1002–03 & n. 6 (7th Cir.1993); *United States v. Monteith,* 2001 WL 627424 *2 (D.N.D. March 12, 2001). *Compare also United States v. Rhodes,* 253 F.3d 800, 803, 804 (5th Cir.2001) (provision that "[p]ursuant to Federal Rule of Criminal Procedure 11(e)(1)(B) both parties stipulate and agree" a particular Guideline provision applies constitutes a Rule 11(e)(1)(B) (2001) agreement). However, the Plea Agreement does not expressly state that the government must recommend the stipulated calculation or refrain from opposing defendant arguing for the stipulated calculation. To the contrary, ¶ 7 of the Plea Agreement expressly provides that the parties are free to correct any "[e]rrors in the calculations or interpretation of any of the guidelines" and may do so through statements directly to the probation officer or court setting forth "the *disagreement* as to the correct guidelines and their application." Thus, the Plea Agreement expressly provides that the

---

**15.** Prior to December 1, 1999, Rule 11(e)(1)(B) read: "the attorney for the government will: . . . (B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court."

**16.** Paragraph 16 of the Plea Agreement provides in part: "The defendant further acknowledges that if the Court does not accept the defendant's sentencing recommendation, the defendant will have no right to withdraw his guilty plea." Nothing else in the Plea Agreement refers to a "sentencing recommendation" of the defendant. This may simply mean any recommendation that the defendant may make during the sentencing hearing or, perhaps, it was intended as a reference to the preliminary Guidelines calculation contained in ¶ 6 of the Plea Agreement.

government is not required to recommend the preliminary Guidelines calculation nor refrain from opposing any view defendant may have as to a Guidelines calculation. The government has not made any promise that brought the Plea Agreement within the purview of Rule 11(e)(1)(B) (2001). Therefore, there could be no violation of Rule 11(e)(2) (2001)'s advice requirement.

██ Even if the Plea Agreement were to be construed as a Rule 11(e)(1)(B) (2001) plea agreement, the failure to provide the 11(e)(2) (2001) advice at the plea colloquy would not be a basis for granting withdrawal of defendant's guilty plea. The Plea Agreement provides that defendant may not withdraw his plea in the event the court does not accept the preliminary Guidelines calculation contained therein or the parties' recommendations. *See* Plea Agreement ¶¶ 6(e), 7, 16. As previously discussed, defendant was aware of the provisions of the Plea Agreement and is a sophisticated person who would have understood the Plea Agreement. Under such circumstances, no sufficient basis exists for withdrawing a guilty plea based on failure to provide the Rule 11(e)(2) (2001) advice at the plea colloquy. *See Diaz–Vargas,* 35 F.3d at 1225–26; *Hauptman,* 111 F.3d at 51; *United States v. McCarthy,* 97 F.3d 1562, 1575–76 (8th Cir.1996), *cert. denied,* 519 U.S. 1139, 117 S.Ct. 1011, 136 L.Ed.2d 888 (1997), 520 U.S. 1133, 117 S.Ct. 1284, 137 L.Ed.2d 359 (1997); *United States v. Vaughn,* 7 F.3d 1533, 1536 (10th Cir.1993), *cert. denied,* 511 U.S. 1036, 114 S.Ct. 1553, 128 L.Ed.2d 201 (1994). *Compare Dominguez Benitez,* 310 F.3d at 1225–27. In any event, this claim would fail because defendant does not even conclusorily assert that he would not have pleaded guilty had he been advised in accordance with Rule 11(e)(2). *See Martinez,* 277 F.3d at 533; *Vaughn,* 7 F.3d at 1536.

██ At the plea colloquy, defendant was advised that, if he went to trial and was found guilty, he would have the right to appeal, but that he was waiving that trial related right and others by choosing to plead guilty. Oct. 30, 2002 Tr. at 9. At the plea colloquy, defendant was not advised regarding ¶ 12 of the Plea Agreement in which he waived the right to appeal any sentence not involving an upward departure and waived the right to collaterally attack his conviction or sentence other than based on certain claims going to the appellate waiver itself. Rule 11(c)(6) (2001) provides that a defendant should be advised regarding any provision of a plea agreement that waives the right to appeal or collaterally attack the sentence. Again, this is an express provision of the Plea Agreement that was read and understood by defendant and of which defendant was aware. *Compare Standiford,* 148 F.3d at 869. The record supports that defendant was aware of this provision and that he would not have changed his mind as to pleading guilty had he been advised of it during the plea colloquy. In any event, defendant does not even allege that this lack of advice at the plea colloquy caused his plea to not be knowing or voluntary or that he would have pleaded otherwise had he been advised. No sufficient basis for withdrawing the plea is presented.

██ At the plea colloquy, defendant was not advised as to the possibility of departing from the Guidelines. *See* Fed. R.Crim.P. 11(c)(1) (2001). However, the appellate waiver provision contained in ¶ 12 of the Plea Agreement provided that all appellate rights were waived "except that the defendant reserves the right to appeal any upward departure imposed by the Court." As previously set forth, defendant was aware of and understood the terms of the Plea Agreement and had discussed them with his attorney. Therefore,

the record shows that defendant was aware of the possibility of a departure from the Sentencing Guidelines. Thus, it can only be found that defendant's guilty plea was knowing and voluntary and that he would not have declined to plead guilty if, during the plea colloquy, he had been advised of the possibility of departures from Guideline provisions. In any event, defendant does not even allege that this lack of advice at the plea colloquy caused his plea to not be knowing or voluntary or that he would have pleaded otherwise had he been advised. No sufficient basis for withdrawing the plea is presented.

■ Last, defendant contends he was not advised as to the effect of any special parole or supervised release term. *See* Fed.R.Crim.P. 11(c)(1) (2001). Since special parole no longer exists and is not a possible sentence in this case, it was not necessary to advise defendant as to special parole. Defendant acknowledges that he was advised as to the possible length of a term of supervised release, *see* Oct. 30, 2002 Tr. at 11, but contends that he was not adequately advised as to its "effect." Rule 11(c)(1) (2001) provides in part that the defendant should be advised as to "the maximum possible penalty provided by law, including the effect of any special parole or supervised release term." The phrase after the comma is a modifier of maximum possible penalty. By "effect," the Rule means the effect on the maximum possible penalty, that is by extending the period beyond the years of a maximum sentence. Such a construction is consistent with Rule 11(b)(1)(H) (2002), which omits the word "effect" and was meant only to be a stylistic change as regards supervised release. *See* 2002 Committee Notes 2d ¶. Thus, the Seventh Circuit has held that it is harmless error to omit advice as to the effect of supervised release or even supervised release entirely as long as the defendant is advised as to the maximum possible sentence and has

been sentenced to less than the maximum period that was stated. *United States v. Schuh,* 289 F.3d 968, 974 (7th Cir.2002); *Elkins,* 176 F.3d. at 1021–22. *See also United States v. Bachynsky,* 934 F.2d 1349, 1360 (5th Cir.), *cert. denied,* 502 U.S. 951, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991). There is no foreseeable possibility that defendant would be sentenced to a term of custody and supervised release that would exceed the 30–year statutory maximum of which he was informed. Therefore, any failure to adequately advise defendant as to the effect of supervised release was harmless. In any event, he has not stated a basis for withdrawing his plea because he does not contend that he would have pleaded differently had supervised release been more fully discussed at the plea colloquy. *Elkins,* 176 F.3d at 1022.

■ Defendant is himself an attorney and has been vigorously represented throughout this case by experienced criminal defense counsel. The record supports that defendant was well aware of the rights he was waiving by pleading guilty and that he was well aware of the terms and provisions of the Plea Agreement that he read and signed, including that any decision as to his sentence was to be made by the court in accordance with the Sentencing Guidelines and applicable statutes. The record shows that defendant's decision to plead guilty was knowing and voluntary and he does not contend otherwise. It is clear that the motion to withdraw the guilty plea, which was filed almost four months after defendant pleaded guilty, is primarily motivated by defendant's perception that there is a substantial possibility that he will be sentenced based on a sentencing range other than the 0–6 month range preliminarily calculated in the Plea Agreement. Defendant's Plea Agreement does not contain a Rule 11(e)(1)(C) (2001) provision with a binding sentencing recom-

mendation and defendant was well aware of that at the time he pleaded guilty. Thus, defendant's new estimation or subsequent misgivings about the sentence that might be imposed is not a sufficient basis for finding either that his guilty plea was not knowing and voluntary or that a fair and just reason otherwise exists for withdrawing the guilty plea. *See Underwood,* 174 F.3d at 852–54. A defendant who is offered a Plea Agreement that he viewed as valuable and accepts it after full and careful consideration, is not entitled to withdraw the guilty plea when his reassessment of the offer results in a less attractive view of the agreement. *See Hauptman,* 111 F.3d at 51. Defendant's arguments concerning the Rule 11 plea colloquy state no sufficient basis for finding that his guilty plea was not knowing and voluntary. As is fully discussed above, there is no contention raised regarding the Rule 11 colloquy that requires an evidentiary hearing in order to determine if a fair and just reason exists for withdrawing defendant's guilty plea.

## B. Mutual Mistake

 Pointing to the contractual nature of a plea agreement and the expectations of both parties that defendant would be sentenced based on a 0–6 month sentencing range, defendant contends there was a mutual mistake [17] by the parties that entitles him to void the contract, that is, withdraw from the Plea Agreement. *United States v. Barnes,* 83 F.3d 934, 938–39 (7th Cir.), *cert. denied,* 519 U.S. 857, 117 S.Ct. 156, 136 L.Ed.2d 101 (1996), is directly on point and to the contrary. *Barnes* recognizes that ordinary contract principles generally apply to plea agreements and thus theories of mutual mistake may be a basis for invalidating a plea agreement. *Id.* at

938. However, *Barnes* also recognizes that a mutual mistake must go to an essential term of a contract in order to be a basis for invalidating the contract. *Id. Barnes* holds that, where the court is not bound by the parties' understanding or estimation of the correct sentence, the sentence is not an essential term of the contract and therefore sentence misunderstanding cannot be a mutual mistake that constitutes a basis for voiding the plea agreement or withdrawing from the plea. *Id.* at 938–39. That is the situation in the present case. Loutos's Plea Agreement expressly provides that the court is not bound by the preliminary sentencing calculation contained therein and Loutos was advised as to that provision during the Rule 11 plea colloquy.

The cases cited by defendant are distinguishable. In *United States v. Williams,* 198 F.3d 988, 992–94 (7th Cir.1999), the parties assumed, and the plea agreement expressly stated, that Williams' maximum statutory sentence was 10 years' incarceration, but Williams was actually subject to a 15–year minimum. That is not the situation in the present case. There is no indication that Loutos might be subject to a sentence greater than the 30–year statutory maximum set forth in the Plea Agreement and stated during the plea colloquy.

In *United States v. Rothberg,* 2001 WL 1654758 (N.D.Ill.Dec.20, 2001), the Plea Agreement indicated the loss valuation was over $1,000,000, but this was based on the parties' understanding that the actual loss was $1,100,000. Defendants were charged with copyright violations based on pirated software. The loss figure was based on the unauthorized software programs that were on defendants' computer

---

17. The court has not yet made a determination as to the appropriate sentencing range. For purposes of considering this aspect of defendant's motion, however, it will be assumed that the sentencing range ultimately determined will be higher than 6 months' custody.

**960**

site at the time defendants' computer equipment was seized. At the time of the plea agreement, defendants and the government understood that no technical basis existed for determining any additional unauthorized software programs had previously been accessed. However, between the time of the guilty pleas and sentencing, the government was able to recover additional data showing losses in excess of $10,000,000. The court characterized the particular situation in *Rothberg* as being an unusual circumstance [18] distinguishable from most mutual mistake situations where withdrawal of the guilty plea would not be appropriate.

> [I]n ... the vast majority of other cases in which the Guideline calculation turns out different from what is expected, the parties have some level of awareness, or at least have a basis to be aware, that different information could turn up. In this case, by contrast, the parties did not believe that it was possible to extract the information regarding the earlier software uploads. That unusual state of affairs differentiates this case from others in which the parties have made, at the time of the guilty plea, a mutual mistake regarding the Guideline calculation.

*Id.*, 2001 WL 1654758 at *4. That is not the situation in the present case. Here, the parties were well aware of the investment fraud charges and the potential lengthy sentence that Loutos could face if Loutos had pleaded guilty to those charges or if those charges were to be considered relevant conduct to the bank fraud charge for which he pleaded guilty. In the present case, the parties' possible incorrect legal analysis of whether the investment fraud

constitutes relevant conduct for the bank fraud, *see Loutos I*, 2003 WL 168627 at *5–8, is not the same as a plea agreement being based on a mutual and incorrect understanding that certain additional evidence going to a specific fact (loss amount) was nonexistent.[19]

The parties' possible misperceptions of the proper sentencing range resulting from defendant's guilty plea is not a fair and just reason for permitting withdrawal of defendant's guilty plea. *Barnes*, 83 F.3d at 938–39.

### C. Legal Innocence

 The Seventh Circuit has recognized legal innocence as a fair and just reason to withdraw a guilty plea. *Hodges*, 259 F.3d at 661. Bare protestations of innocence, however, are not sufficient; the defendant must proffer credible evidence supporting innocence. *Id.; United States v. Gomez–Orozco*, 188 F.3d 422, 425 (7th Cir.1999). In situations like the present one, where defendant's present contentions as to innocence are in direct conflict with admissions he made under oath at the plea colloquy, he must overcome the "strong presumption of verity" accorded the admissions at the plea colloquy. *United States v. Silva*, 122 F.3d 412, 415 (7th Cir.1997) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)); *Groll*, 992 F.2d at 758. Moreover, when it is also true that the evidence the defendant presently relies upon in order to show innocence was already known by him at the time of the guilty plea, the court "is generally justified in discrediting" the claim of innocence. *Groll*, 992 F.2d at 758. *See also Silva*, 122 F.3d at 415;

---

**18.** Since *Rothberg* is distinguishable from the present case, it is unnecessary to consider whether *Rothberg* is otherwise correctly decided.

**19.** It is further noted that, contrary to defendant's current assertion, there was no stipulation in the Plea Agreement that the bank fraud did not involve any investment fraud relevant conduct. *See* Plea Agreement ¶ 17; *Loutos I*, 2003 WL 168627 at *4.

*Rinaldi,* 246 F.Supp.2d at 994. Additionally, the court is to consider the assertions of innocence in light of all the other evidence, including sentencing evidence, that has been before the court. *See Silva,* 122 F.3d at 415–16. In this case, that includes the evidence presented at the trial of the codefendants. *See Loutos I,* 2003 WL 168627 at *3.

The charge to which defendant pleaded guilty was bank fraud in violation of 18 U.S.C. § 1014. While the investment fraud that was originally charged may be pertinent as relevant conduct, *see Loutos I,* 2003 WL 168627 at *5–8, it is not the offense upon which the guilty plea is based. The question of whether defendant is legally innocent concerns whether he is legally innocent of the single § 1014 bank fraud charge. Evidence related to the investment fraud may still be pertinent to that decision. For example, evidence that defendant knew of the investment fraud scheme may be relevant to showing defendant's intent or the surrounding circumstances at the time the bank fraud was committed. However, defendant's claim of legal innocence cannot be based solely on being legally innocent of the investment fraud; he must be legally innocent of the bank fraud charge.

The § 1014 charge is based on Loutos aiding Daniel Benson (a codefendant convicted of the investment fraud) in opening a bank account for Lennox Investment Group, Ltd. ("Lennox") at First of America Bank, an FDIC-insured bank. On the application to open the account, it was falsely represented that Benson was the sole owner of Lennox. Loutos now contends that he was not guilty of this offense because he was unaware that Benson would make the false statement regarding his ownership of Lennox. Notably, Loutos does not contend that he did not know that the statement was false, only that he did not know in advance that Benson would make the false statement in order to open the bank account. Loutos contends he did not have the intent to assist or further Benson's offense.

The elements of the charged § 1014 offense are (1) making a false statement to a bank; (2) knowing the statement was not true at the time it was made; (3) having the intent to influence the bank to take some action, in this case open an account, and (4) the bank is insured by the FDIC. *See United States v. Wells,* 519 U.S. 482, 490, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997); *United States v. Lane,* 323 F.3d 568, 583–84 (7th Cir.2003); *United States v. Swanquist,* 161 F.3d 1064, 1076 (7th Cir.1998), *cert. denied,* 526 U.S. 1160, 119 S.Ct. 2051, 144 L.Ed.2d 218 (1999). Materiality of the false statement is not an element of the offense. *Wells,* 519 U.S. at 490, 117 S.Ct. 921; *Lane,* 323 F.3d at 583–84. Here, defendant is accused of aiding and abetting Benson's conduct. To aid and abet the bank fraud, defendant must have knowingly associated with Benson's bank fraud, have participated in the activity, and have tried to make it succeed. *United States v. Blocker,* 104 F.3d 720, 733 (5th Cir.1997). *See also United States v. Scott,* 267 F.3d 729, 733 (7th Cir.2001); *United States v. Stott,* 245 F.3d 890, 904 (7th Cir.), *cert. denied,* 534 U.S. 1070, 122 S.Ct. 676, 151 L.Ed.2d 589 (2001).

At the plea colloquy, the government set forth a factual basis for the guilty plea and Loutos acknowledged it was correct. Oct. 30, 2002 Tr. at 12–14. Paragraph 5 of the Plea Agreement contains an admission as to a similar statement describing the facts supporting the offense. Among other facts, defendant admitted (a) he accompanied Benson to the bank in order to aid and assist him in opening a bank account; (b) he knew both that Benson was not an owner, officer, or employee of Lennox and that Benson did not have the necessary authorization from the corporation to open

a bank account on its behalf; (c) defendant, who had a long-term relationship at the bank, convinced a bank employee to open the account without the usual corporate authorization documents; (d) defendant completed a deposit account signature card in his own name and was aware Benson completed a signature card in Benson's name; (e) defendant observed Benson complete a sole owner certification and was aware that it contained a false statement as to Benson's ownership; and (f) defendant did this for the purpose of influencing the bank to open the account. That evidence sufficiently supports the charged offense of aiding and abetting a bank fraud, see *Blocker*, 104 F.3d at 734, and defendant does not contend otherwise.

Defendant does not dispute that he intended to assist Benson in opening the account, but now contends that he did not intend to do it through the use of false statements by Benson. In support of his current contention, defendant points to statements of two bank employees, deposition testimony he gave during the SEC's civil proceedings related to the investment fraud, and the SEC's limited finding regarding Loutos's involvement in securities fraud. As part of the proceedings in the present case, defendant had access to all these materials prior to his October 30, 2002 guilty plea.

Defendant cites to deposition testimony of two bank employees, one of whom was the bank employee who processed the opening of the Lennox account. Defendant points to their testimony and contends it does not implicate him. That, however, does not aid him on his present motion. Defendant must point to credible evidence that refutes and overcomes the inculpatory admissions he made at the plea

colloquy. The employee who opened the Lennox account does not recall her meeting with Benson and Loutos. The other employee was not involved in opening the Lennox account. Thus, neither offers any testimony that aids defendant in showing legal innocence.

Defendant also points to an SEC Action Memorandum. This is a document from the SEC Regional Office to the SEC in which certain actions are recommended related to the securities fraud that was the subject of a civil action brought by the Securities and Exchange Commission. *See United States v. Peitz*, 2002 WL 31101681 *2 (N.D.Ill. Sept.30, 2002) ("*Peitz III*"). Loutos is not mentioned by name in the Action Memorandum, but there are two references to Benson's attorney, meaning Loutos. After mentioning that Benson executed nearly all the transactions in the Lennox account, the following is added in a footnote: "Benson's attorney executed at least one transaction when Peitz was unable to locate Benson. However, the staff uncovered no evidence that the attorney knowingly participated in, or was aware of, the scheme to defraud investors." *Id.* As part of ruling on whether the government should be required to disclose all or part of the Action Memorandum to Loutos and his codefendants, the court considered whether the Action Memorandum possibly contained admissible evidence. Based on admissibility pursuant to Fed.R.Evid. 803(8)(C), it was held that, "[o]n the information and arguments presently before the court, the statement in footnote 11 would be admissible if Loutos chooses to present it." *Peitz III*, 2002 WL 31101681 at *5. Even assuming the statement were to be admitted at a trial of the criminal charges against Loutos,[20] a con-

---

**20.** As stated in *Peitz III*, the ruling as to admissibility was based on the information and arguments then before the court. If, prior to its admission, the government had

raised Fed.R.Evid. 403 concerns, including possible jury confusion in comparing the evidence presented in court to the evidence submitted to the SEC for a decision on whether

clusory statement from a civil agency investigating securities law violations that Loutos was not a participant in or aware of the scheme to defraud is not likely to carry much weight in light of the evidence the government could present at trial regarding Loutos's knowing participation in the scheme actually charged in this case. *See Loutos I,* 2003 WL 168627 at \*7. But even if that statement, of which defendant was aware at the time he pleaded guilty, were sufficient to raise an issue as to his legal innocence of investment fraud, it would not be a basis for permitting withdrawal of the guilty plea. As previously emphasized, defendant must show he is legally innocent of bank fraud, not just that he is legally innocent of the investment fraud for which he was originally charged.

Last, defendant points to his own deposition testimony during SEC civil proceedings. At the Quilling deposition,[21] defendant testified that he accompanied Benson to assist him in opening the Lennox account and that he was a signatory for the account. Loutos Quilling Dep. at 58. He also testified that this was unusual in that this was the only time he had ever done either of these for a client. *Id.* Central to facts supporting the bank fraud charge in this case, defendant testified that he was aware that Benson was not an owner of Lennox, *id.* at 91, 98–99, and that he was aware Benson nevertheless completed a sole ownership certificate, *id.* at 98–100. Defendant also testified that this was done to expedite the opening of the account and that he did not think this was intended to create a false impression, *id.* at 99–100,

but he also testified that the usual practice would be to open the corporate account and then have the corporation issue the required resolution thereafter. *Id.* at 90. As to the exact details of key issues such as how it was decided to open the account as a sole owner and who initiated what (Loutos, Benson, or the bank employee), Loutos repeatedly stated he did not remember or was uncertain. *See id.* at 92–99. Previously, on May 24, 1999, Loutos had testified in a deposition in the SEC's civil action.[22] During that deposition, regarding the opening of the Lennox account, Loutos testified that he could not recall anything about what was said about Benson's affiliation with Lennox. Loutos SEC Dep. at 79–80.

To some extent, Loutos's deposition testimony corroborates inculpatory statements he made at the plea colloquy. The only potentially exculpatory testimony is that Loutos did not go to the bank already expecting Benson to make false statements, but even that is not necessarily inconsistent with the statement at the plea colloquy that he went to the bank to assist Benson in opening the account. In any event, even if Loutos went to the bank not expecting Benson to make false statements, he did nothing to stop his client from making statements on bank forms that Loutos admitted he knew were false. Primarily, however, Loutos testified during the two depositions that he did not recall the details of the opening of the Lennox account. The equivocal testimony at defendant's two depositions, where he had an interest in avoiding pos-

or not to bring a civil action alleging securities law violations, the Action Memorandum footnote may not have been admitted at trial. *See Cooper v. Carl A. Nelson & Co.,* 211 F.3d 1008, 1018 (7th Cir.2000); *Klein v. Vanek,* 86 F.Supp.2d 812, 820–21 (N.D.Ill.2000).

21. Excerpts from the February 21, 2001 deposition of Loutos in proceedings brought by

Michael Quilling as the receiver for Lennox is provided as Exhibit B to defendant's motion to vacate plea (hereinafter "Loutos Quilling Dep.").

22. An excerpt from this deposition is provided as Exhibit G to defendant's motion to vacate plea (hereinafter "Loutos SEC Dep.").

sible liability, is certainly not enough to satisfy the heavy burden of overcoming the presumption of verity accorded defendant's subsequent testimony at the plea colloquy. Defendant has not presented sufficient credible evidence to support his claim of legal innocence.

### III. CONCLUSION

Defendant does not point to any sufficient ground that requires an evidentiary hearing in order to determine if he can establish a reason for withdrawing his guilty plea. As indicated at the last status hearing, defendant's sentencing will be May 14, 2003, but it will be at 11:30 a.m. By April 16, 2003, the probation officer shall provide the parties and court with a supplemental or revised PSR taking into consideration the issues raised in *Loutos I* and the sentencing memoranda that were thereafter filed by the parties. Any objections to the supplemental or revised PSR are to be filed by April 25, 2003. A status hearing will be set for April 30, 2003 at 11:00 a.m. at which the parties shall be prepared to address the question of whether they believe any evidentiary hearing will be necessary to resolve any sentencing issues and what witnesses, if any, they would anticipate presenting. To the extent a party expects to present a witness, he or it should be prepared to proffer the witness's potential testimony.

IT IS THEREFORE ORDERED that defendant Loutos's motion to vacate plea [238] is denied. The revised or supplemental PSR for Loutos is to be provided by April 16, 2003. Any objections to the revised or supplemental PSR are to be filed by April 25, 2003. Status hearing of May 14, 2003 is reset to April 30, 2003 at 11:00 a.m. Sentencing of defendant Loutos is set for May 14, 2003 at 11:30 a.m.